UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
NANCY HAMENT, as Executrix of the Estate　　　：
of FRANCES HAMENT, deceased,　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　Plaintiff,　　　　：　　　　　06 Civ. 01 (SHS)
　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　-against-　　　　　　　　　　　：　　　　　OPINION & ORDER
　　　　　　　　　　　　　　　　　　　　　　：
STATE FARM MUTUAL AUTOMOBILE　　　　　　：
INSURANCE COMPANY,　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　Defendant.　　　：
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

## I.　　Introduction

　　　　The arcane but important question raised by this action has been directly addressed by

neither the New York Court of Appeals nor the U.S. Court of Appeals for the Second Circuit.

That question is whether or not payments received from both the underinsured driver of an

offending vehicle and from the vicariously liable owner of that vehicle are to be aggregated for

purposes of determining whether the limit of the Supplementary Uninsured/Underinsured

Motorist ("SUM") provision in the insurance contract has been met.  For the reasons as set forth

below, this Court has determined that the payments are to be aggregated.

　　　　This action stems from an automobile accident in which Frances Hament died after

another vehicle – driven by Joan Beck pursuant to a lease with the Toyota Motor Credit

Corporation – collided with Hament's car.  Hament's estate filed the present complaint seeking a

judgment directing defendant State Farm Mutual Automobile Insurance Company – which

insured Hament's car – to pay it $150,000 pursuant to the SUM provision in that contract.  That

provision limits underinsurance coverage payments to $250,000, and the plaintiff estate seeks

1

$150,000 from State Farm because Beck was insured for only $100,000.  However, State Farm contends that plaintiff has already received not only $100,000 from Beck's insurer but also an additional $400,000 from Tokio Marine Insurance Company on behalf of the vicariously liable Toyota, and therefore plaintiff has received more than the $250,000 limit in the SUM provision and is entitled to nothing more.  The Hament estate responds that Tokio Marine's payment on behalf of Toyota should not count against the limit in the SUM provision because, plaintiff contends, Toyota should legally be considered an independent tortfeasor and payments from independent tortfeasors are not aggregated for purposes of the SUM provision.  Both parties now move for summary judgment.

As set forth below, this Court finds that the SUM provision clearly limits payments to $250,000; the Hament estate has already received $500,000 in insurance coverage from various sources connected to the offending Beck vehicle; the Court is aware of no New York statute, regulation, or case law that contradicts the language of the State Farm SUM limit at issue. Accordingly, defendant's motion for summary judgment is granted, plaintiff's motion for summary judgment is denied and the complaint is dismissed.

## II.    Background

Except as noted, the following facts are undisputed.  Frances Hament died from injuries sustained in an automobile accident on July 26, 2003.  (Defendant's Local Civil Rule 56.1 Statement ("Def.'s Rule 56.1") at ¶ 3; Plaintiff's Counter Statement of Material Fact to Defendant's 56.1 Statement ("Plt.'s Rule 56.1") at ¶ 3; Aff. of Nancy Hament dated April 17, 2006 at ¶ 2.)  The accident occurred when a vehicle driven by Joan Beck collided with Hament's vehicle.  (Def.'s Rule 56.1 ¶3; Plt.'s Rule 56.1 ¶3; Hament Aff. ¶ 3.)  According to plaintiff, the accident was the fault of Joan Beck.  (Hament Aff. ¶ 3; Plt.'s Rule 56.1 statement dated April 21,

2006, at ¶ 2.)  Beck's vehicle was owned by Toyota, (Def.'s Rule 56.1 ¶5; Plt.'s Rule 56.1 ¶5; Hament Aff. ¶ 4.), which according to plaintiff, had leased the vehicle to a corporate entity connected with Beck's husband.  (Hament Aff. ¶ 4.)  Beck was insured by a policy with a limit of $100,000 for bodily injury damages to third parties.  (Def.'s Rule 56.1 ¶4; Plt.'s Rule 56.1 ¶4; Hament Aff. ¶ 5.)

Frances Hament was insured pursuant to a policy issued by defendant State Farm, and the policy includes a SUM provision with a limit of $250,000.  (Def.'s Rule 56.1 ¶1; Plt.'s Rule 56.1 ¶1; Hament Aff. ¶ 6 and Exh. A.)  The provision provides coverage for "all sums that the insured or the insured's legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such uninsured motor vehicle's ownership, maintenance or use."  (Def. Notice of Motion for Summary Judgment, Exh. C ("State Farm Policy"), at ¶ II.)  The policy defines "uninsured motor vehicle" as a vehicle for which "there is a bodily injury liability insurance coverage or a bond applicable to such motor vehicle at the time of the accident, but . . . the amount of such insurance is less than the third-party bodily injury liability of this policy."  (Id. at ¶ I(c).)

Nancy Hament, as executrix of the estate of Fran Hament, filed a prior action against Beck and Toyota for the personal injury and wrongful death of Frances Hament.  (Hament Aff. ¶ 7.)  The estate recovered $100,000 from Beck (Def.'s Rule 56.1 ¶7; Plt.'s Rule 56.1 ¶7; Hament Aff. ¶ 7.), which was Beck's policy limit for bodily injury to third parties.  (Def.'s Rule 56.1 ¶4; Plt.'s Rule 56.1 ¶4; Hament Aff. ¶5.)  Separately, the estate settled with Toyota for a payment of $400,000.  (Def.'s Rule 56.1 ¶8; Plt.'s Rule 56.1 ¶8; Hament Aff. ¶ 8.)  The $400,000 payment

was made by Tokio Marine, which was the insurer for Toyota.  (Def.'s Rule 56.1 ¶8; Plt.'s Rule 56.1 ¶8; see also, Exh. D to Defendant's Notice of Motion for Summary Judgment.)

According to plaintiff, its damages exceeded – by some unspecified amount – $500,000, which was the total collected by plaintiff from Beck ($100,000) and Toyota ($400,000). (Hament Aff. ¶ 9.)  Therefore, plaintiff sought an additional $150,000 from State Farm pursuant to the SUM provision in Hament's policy because it had only received $100,000 from Beck and the SUM limit was $250,000.  State Farm declined to pay, contending that plaintiff had already recovered $500,000 – which is more than the SUM limit.  Plaintiff then commenced the present action.  As noted above, both parties now move for summary judgment.

## III.   Discussion

A.   <u>Summary Judgment Standard</u>.

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Allen v. Coughlin</u>, 64 F.3d 77, 79 (2d Cir. 1995); <u>LaFond v. Gen. Physics Servs. Corp.</u>, 50 F.3d 165, 171 (2d Cir. 1995).  In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 219 (2d Cir. 2004); <u>see also</u> <u>LaFond</u>, 50 F.3d at 171.  However, the party opposing summary judgment "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" in support of its factual assertions, <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998), such that "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  <u>Golden Pacific Bancorp v.</u>

F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Where, as here, both parties have moved for summary judgment, the same legal standards apply.  See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Id. (citing Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

     B.    Pursuant to the "Maximum SUM Payments" Provision of Hament's State Farm Policy, Plaintiff Is Not Entitled to any Additional Payments.

The plain text of the SUM provision in Hament's insurance contract with State Farm precludes Hament's claim in this action.  The "Maximum SUM Payments" portion of the SUM provision states as follows:

> **6.  Maximum SUM Payments.**  Regardless of the number of insureds, our maximum payment under the SUM endorsement shall be the difference between:
>
> a.    the SUM limits; and
> b.    the motor vehicle bodily injury liability insurance or bond payments received by the insured or the insured's legal representative from or on behalf of all persons that may be legally liable for the bodily injury sustained by the insured.

(State Farm Policy at ¶ 6.)  In the present case, both parties agree that the "SUM limit" pursuant to Section 6(a) of the SUM provision is $250,000.  (See Def.'s Rule 56.1 ¶1; Plt.'s Rule 56.1 ¶1.) Moreover, because Toyota, as the owner of the vehicle, is vicariously liable pursuant to Section 388 of the New York Vehicle & Traffic Law for Beck's negligent operation of Toyota's car, Toyota is an entity "that may be legally liable for the bodily injury sustained by the insured" pursuant to Section 6(b) of the SUM provision.  (See NY VTL § 388; State Farm Policy at ¶

6(b).)  Therefore, the $250,000 SUM limit must be reduced by the "motor vehicle bodily injury liability insurance  . . . payments received" in the amounts of $100,000 from the Beck payment and $400,000 from the Toyota payment.  (See State Farm Policy at ¶ 6(b).)  Accordingly, plaintiff has already received payments that exceed the maximum payment that State Farm is obligated to pay under Section 6 of its policy with Frances Hament.

      C.      The "Maximum SUM Payments" Provision of Hament's State Farm Insurance Policy Is Enforceable.

Even when the text of an insurance policy is clear, New York courts have voided SUM provisions of insurance agreements where those provisions contradicted the SUM requirements set forth in New York insurance law.  See, e.g., Passaro v. Metropolitan Property & Liability Ins. Co., 128 Misc. 2d 21, 24, 487 N.Y.S.2d 1009 (N.Y. Sup. Ct. Queens Cty. 1985) ("where the underinsured statute is at variance with the policy provisions, the statute must prevail"), aff'd 124 A.D.2d 647, 507 N.Y.S.2d 836 (2d Dep't 1986); Garry v. Worldwide Underwriters Ins. Co., 120 Misc. 2d 91, 92, 465 N.Y.S.2d 483 (N.Y. Sup. Ct. Erie Cty. 1983), aff'd 101 A.D.2d 717 (4th Dep't 1984).

Here, plaintiff contends that New York insurance law "requires that set offs of SUM coverage be applied to each individual tortfeasor and to the extent the language in defendant's policy differs, it is void."  (Pl. 5/4/06 Mem. of Law, at 5.)  As discussed below, plaintiff cites no New York statute or regulation that contradicts the terms of the State Farm SUM provision. While the plaintiff correctly identifies the legal principle requiring separate SUM calculations for each individual tortfeasor, as set forth by the New York Court of Appeals in S'Dao v. National Grange Mutual Insurance Co., 87 N.Y.2d 853, 638 N.Y.S.2d 597, 661 N.E.2d 1378 (1995), that principle is inapposite here because there is no basis for Hament's contention that Toyota is an

individual tortfeasor distinct and apart from tortfeasor Beck; i.e., simply because Toyota is vicariously liable as the vehicle's owner does not make it an independent tortfeasor for purposes of the SUM provision.

      1.    *The State Farm SUM Provision Complies with all Relevant New York Insurance Statutes, Regulations, and Court Decisions.*

New York Insurance Law § 3420(f)(2) requires insurers to provide, at the option of the insured, SUM insurance for bodily injury liability up to the limits of the insured's own bodily injury liability policy.  That section provides that underinsured motorist coverage is triggered if:

> . . . the limits of liability under all bodily injury liability bonds and insurance policies of another motor vehicle liable for damages are in a lesser amount than the bodily injury liability insurance limits of coverage provided by such policy.

N.Y. Ins. Law § 3420(f)(2) (2006).  In addition, New York Insurance Department regulations concerning "Requirements for SUM Endorsements" define an "uninsured motor vehicle," in relevant part, as:

> a motor vehicle that, through its ownership, maintenance or use, results in bodily injury to an insured, and for which . . . there is a bodily injury liability insurance coverage or bond applicable to such motor vehicle at the time of the accident, but . . . the amount of such insurance coverage or bond is less than the third-party bodily injury liability limit of this policy.

11 N.Y.C.R.R. 60-2.3(1)(c) (2006).  The language mandated by the New York statute and Insurance Department regulation is contained in Section I(c) of the State Farm policy at issue here.  (See State Farm Policy, at ¶ I(c).)  Indeed, plaintiff cites no specific provision of any New York statute or regulation that, according to plaintiff, contradicts the State Farm SUM provision.  (See Pl. 5/4/06 Mem. of Law in Opposition to Def.'s Motion for Summary Judgment, at 3-6.)

Instead, in an attempt to establish that the SUM provision of the State Farm policy violates New York law more generally, plaintiff relies heavily on the four paragraph memorandum opinion of the New York Court of Appeals in S'Dao, 87 N.Y.2d 853.  In S'Dao, the Appellate Division, Fourth Department, had denied the plaintiff's motion for summary judgment seeking SUM coverage from one of two individual tortfeasors where one tortfeasor was underinsured, but where the two tortfeasors together had a combined third-party liability coverage that surpassed the plaintiff's SUM limit.  Id. at 855.  The New York Court of Appeals reversed the lower court decision and explained that "the proper focus is on the uninsured status of each individual tortfeasor."  Id. at 854.  The Court determined that an "adequately insured party's bodily injury liability coverage should not have been considered to defeat plaintiff's claim for under-insurance based on the status of the underinsured driver."  Id. at 855.

However, S'Dao does not control the outcome in the present action, since S'Dao concerned both multiple tortfeasors and multiple automobiles.  S'Dao would only control the present action if Beck and Toyota were considered separate and distinct tortfeasors pursuant to New York law, despite being connected to the same offending automobile.   As explained next, this Court concludes that even though Toyota is vicariously liable by statute, it is not a separate and distinct tortfeasor for purposes of the policy's SUM provision.

> 2.    *Plaintiff Cites No New York Legal Authority That Makes Toyota a Separate and Distinct Tortfeasor.*

Plaintiff contends that pursuant to New York law "Toyota remains a separate tortfeasor, even if its liability was vicarious."  (Pl. 4/21/06 Mem. of Law, at 6.)  However, while plaintiff has alleged that the car accident was due to the fault of Joan Beck – the driver of the car that collided with Frances Hament's car – (Hament Aff. ¶ 3; Plt.'s Rule 56.1 statement dated April

21, 2006, at ¶ 2) plaintiff has not alleged that that the accident was in any way also due to the fault of Toyota.  Thus, plaintiff has not alleged that any independent tort was committed by Toyota.  Nor does plaintiff cite any New York authority holding that an entity held vicariously liable pursuant to Section 388 of the New York Vehicle & Traffic Law – or any other New York statute – is a separate and distinct tortfeasor from the party who actually committed the tort.  Instead, plaintiff culls a single sentence from each of two New York court decisions which use terminology that arguably suggests that a vicariously liable party may also be a tortfeasor; neither of those references carry the day.

Specifically, plaintiff cites Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973), which – in dicta – refers to "basic . . . principles of common law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm." Id. at 565-66.  Plaintiff also seeks support in the word choice of a panel of the Appellate Division, Fourth Department, that "an owner or general contractor who is held vicariously liable under Labor Law § 240(1) is entitled to full indemnity from the party actually responsible for the incident giving rise to the plaintiff's injuries, thus allowing a passive or vicarious tortfeasor to recover from the active or actual tortfeasor." Conley v. Salt City Energy Venture, L.P., 234 A.D.2d 909, 910, 651 N.Y.S.2d 790 (4th Dep't 1996).  However, neither of these two decisions expressly holds that an entity held vicariously liable is a separate and distinct tortfeasor and, indeed, neither even addresses the issue apart from the glancing references set forth above.  Importantly, just one year after Chief Judge Breitel authored Rogers for the New York Court of Appeals, he wrote for the same court and commented on the considerable "trouble" and "the inevitable limited accuracy of terminology" that resulted from "the extension of active-passive terminology from the rules governing active tort-feasors, who

were liable to those only vicariously liable for the harm done by active tort-feasors." Kelly v. Diesel Constr. Div. of Carl A. Morse, Inc., 35 N.Y.2d 1, 7, 358 N.Y.S.2d 685, 315 N.E.2d 751 (1974).  Given the "limited accuracy" of the terminology cited by plaintiff, this Court is unwilling to rely on a single sentence of dicta in two separate cases to find by implication that a party held vicariously liable pursuant to Section 388 of the New York Vehicle & Traffic Law is in fact a separate and distinct tortfeasor from the negligent driver for purposes of interpreting the SUM provision of the governing insurance contract.

Moreover, this Court is especially hesitant to accept plaintiff's argument when a New York court has specifically distinguished between the concepts of negligence and liability in the particular context of a vehicle owner's vicarious liability pursuant to Section 388 of the New York Vehicle & Traffic Law.  In Tikhonova v. Ford Motor Co., 10 A.D.3d 185, 779 N.Y.S.2d 47 (1st Dep't 2004), a panel of the First Department noted that "the concept of 'negligence' applies whenever people act without exercising the appropriate degree of care, while to be 'liable' they must be held obligated to another by law." Id. at 187 (citing Black's Law Dictionary 925, 1056 [7th ed.]).  In light of Tikhonova, and in the absence of any authority pointing to a different result, this Court will not determine that Toyota was an independent tortfeasor in the present action.

> 3. *The Present Case Involves the Negligence of Only One Vehicle, Whereas the Cases Relied on by Plaintiff Involve the Negligence of Multiple Vehicles.*

In addition to the reasons stated above, this Court notes that plaintiff has based its argument on cases involving multiple tortfeasors connected to multiple offending vehicles, whereas the present action involves only one offending vehicle.  Most notably, the S'Dao litigation arose "[w]here plaintiff was a passenger injured in a two-vehicle accident" and one of

the two "offending vehicles was underinsured." S'Dao, 87 N.Y.2d at 854-55.  That is also true of plaintiff's use of Passaro v. Metropolitan Property & Liability Ins. Co., 128 Misc. 2d 21, 487 N.Y.S.2d 1009 (N.Y. Sup. Ct. Queens Cty. 1985), where "[t]he collision between the two motor vehicles was due to the fault of the operators of both vehicles, and was due, in no way, to any fault on the part of the [plaintiff] passengers." Id. at 22.  Similarly, in Nationwide Ins. Co. v. Freehill, 224 A.D.2d 532, 637 N.Y.S.2d 800 (2d Dep't 1996), the plaintiff was a passenger in one of three vehicles involved in the accident.  Id. at 533.  The facts of these three cases contrast with the present case, where only one actual tortfeasor – Beck – drove an "offending vehicle" and where the adequately insured party against whom plaintiff also recovered damages – Toyota – was connected to the same offending vehicle as the underinsured tortfeasor driver.

> D.   The Nature of Tokio Marine's Insurance Payment on Behalf of Toyota Does Not Present a Genuine Issue of Material Fact.

Despite moving for summary judgment itself, Hament opposes State Farm's motion for summary judgment by contending that the question of whether the $400,000 payment from Tokio Marine to Hament on behalf of Toyota constitutes an insurance payment as contemplated by New York Insurance Law § 3420(f)(2).  Specifically, Hament contends that discovery is necessary to determine whether the $400,000 payment was pursuant to an insurance contract or the result of self-insurance by Toyota.  If the latter, Hament contends, any such payments cannot be considered in calculating whether plaintiff has reached the SUM payment limit.

Hament cites two cases – Am. Cas. v. St. Charles Hosp. & Rehab. Ctr., 21 A.D.3d 914, 801 N.Y.S.2d 57 (2d Dep't 2005) and Consol. Edison Co. of N.Y. v. Liberty Mut., 193 Misc. 2d 399, 749 N.Y.S.2d 402 (N.Y. Sup. Ct. N.Y. Cty. 2002) – for its proposition that self-insurance payments do not constitute insurance payments for purposes of the SUM provision.  However,

both of these cases addressed the narrow question of whether self-insurance constituted "other insurance" as defined in the respective contract provisions that obligated an insurance company to defend and indemnify the policy holder for an underlying tort action against the policy holder. Am. Cas., 21 A.D.3d at 915-16; Consol Edison Co. of N.Y., 193 Misc. 2d at 400-01. This is not the issue here. Plaintiff cites no case holding that a self-insurance payment from a vicariously liable entity such as Toyota should be disregarded for purposes of calculating a SUM payment. Accordingly, the nature of the Toyota payment does not present a genuine issue of material fact, and defendant's motion for summary judgment should be granted.

## IV. Conclusion

As set forth above, the Court finds that the SUM provision at issue limits payments to $250,000, and the Court is aware of no New York statute, regulation, or case law that contradicts the language of the State Farm SUM limit. Accordingly, State Farm's motion for summary judgment is granted, Hament's motion for summary judgment is denied and the Clerk of Court is directed to enter judgment dismissing the complaint.

Dated: New York, New York
       January 18, 2007

SO ORDERED:

Sidney H. Stein, U.S.D.J.

12